Argued and submitted November 23, 2009, affirmed August 31, 2011

Jack STEWART,
guardian *ad litem* for Jane Doe,
*Plaintiff-Appellant,*

*v.*

KIDS INCORPORATED OF DALLAS, OR,
an Oregon non-profit corporation;
and SLD, Inc.,
an Oregon corporation,
dba Dairy Queen of Dallas,
*Defendants-Respondents.*

Polk County Circuit Court
07P1791; A139501

261 P3d 1272

William D. Brandt argued the cause and filed the briefs for appellant. With him on the briefs was William D. Brandt, P.C.

David Doyle argued the cause and filed the brief for respondent Kids Incorporated of Dallas, OR.

Matthew J. Kalmanson argued the cause for respondent SLD, Inc. With him on the brief was Hoffman Hart & Wagner LLP.

Before Wollheim, Presiding Judge, and Sercombe, Judge, and Duncan, Judge.*

---

* Duncan, J., *vice* Edmonds, P. J.

DUNCAN, J.

## DUNCAN, J.

Plaintiff brought this action for negligence against defendants Kids Incorporated of Dallas, Or (Kids Inc.), and SLD, Inc., dba Dairy Queen of Dallas (Dairy Queen), seeking damages for injuries sustained by plaintiff's ward, Jane Doe, when she was sexually assaulted while attending a car wash fund-raiser sponsored by Kids Inc. at Dairy Queen's restaurant. Defendants each moved to dismiss on the ground that plaintiff's complaint "fail[ed] to state ultimate facts sufficient to constitute a claim." ORCP 21 A(8). The trial court granted defendants' motions, ruling that the harm suffered was unforeseeable as a matter of law. Plaintiff appeals from the ensuing judgments dismissing his claims against each defendant with prejudice. Because we agree with the trial court's conclusion that plaintiff's complaint failed to allege facts sufficient to establish that the harm suffered was reasonably foreseeable to either defendant, we affirm.

In determining the sufficiency of a complaint under ORCP 21 A(8), we accept as true all well-pleaded allegations in the complaint and give the plaintiff, as the nonmoving party, the benefit of all favorable inferences that may be drawn from those allegations. *Bailey v. Lewis Farm, Inc.*, 343 Or 276, 278, 171 P3d 336 (2007).

Plaintiff's second amended complaint alleged the following facts: Jane Doe, who was then 13 years old, was invited to participate in a car wash fund-raiser sponsored by Kids Inc. held on the premises of Dairy Queen. While attending the car wash, Jane Doe was sexually assaulted by an adult male in the men's restroom of the restaurant. The complaint alleged, in paragraph 5, that defendants knew or should have known that their conduct caused a foreseeable risk of harm. Specifically, paragraph 5 alleged that the assault occurred

> "during the time [Jane Doe] was under the care, supervision and control of defendant Kids Inc. Defendant Dairy Queen is a business establishment that holds itself out to the general public as a restaurant suitable for families and children. Both defendants knew, or should have known, that there was a reasonable probability that given the fact that there were teenage girls present at the car wash and

particularly given the fact that the car wash was advertised and was soliciting strangers to come onto the defendant Dairy Queen property, that there was a reasonable probability that people harboring criminal intent to do harm or injury to children might enter onto the premises for the purpose of making contact with potential underage victims. This probability was significantly enhanced by virtue of the fact that it was reasonably foreseeable to defendants, and each of them, that sexual predators might have made contact with the underage females via the internet who were attending the car wash and frequenting the Dairy Queen."

Thus, paragraph 5 alleged that there was a "reasonable probability" that sexual predators would come to the car wash to harm children and that defendants knew or should have known of that probability because teenage girls were participating in the car wash, the car wash was advertised, and sexual predators might have had contact with teenage girls participating in the car wash.

The complaint also detailed separate allegations of negligent conduct specific to each defendant. In particular, paragraph 6 alleged that Kids Inc. was negligent in the following particulars:

"A.   In failing to have sufficient adults present to supervise Jane Doe and the other children given the number of children in its care, custody and control at the sponsored car wash. An adult might have observed the perpetrator of the sexual assault on Jane Doe and prevented said assault.

"B.   In failing to adequately monitor the whereabouts of Jane Doe while she was in its care, custody and control in that had defendant Kids Inc. properly monitored the whereabouts of Jane Doe and the other children and had a system in place to do so, the sexual offender who perpetrated the sexual assault on Jane Doe would not have had the opportunity to maneuver her into a position where he could not be observed and perpetrate his sexual assault upon her.

"C.   In failing to station a person by the restroom when it was in use by the minor children in its care, custody and control to insure that Jane Doe and others were not accosted by strangers in the restroom.

"D.  By failing to have any system, or an adequate system, of control for the whereabouts of the children when they needed to use the restroom facilities or go into the Dairy Queen. Had defendant Kids Inc. devised such a system of control for the whereabouts of the children, including plaintiff, who needed to use the restroom facilities, the sexual assault upon Jane Doe might have been avoided.

"E.  In failing to observe the adult male who pushed Jane Doe into the men's restroom. Had representatives of defendant Kids Inc. observed the adult male who pushed Jane Doe into the men's restroom, the sexual assault on Jane Doe might have been prevented.

"F.  In failing to respond to noises in the restroom. Had representatives of defendant Kids Inc. observed the adult male who pushed Jane Doe into the men's restroom, the sexual assault on Jane Doe might have been prevented."

Paragraph 12 alleged that defendant Dairy Queen "was negligent and failed to maintain a safe premises" as follows:

"A.  In failing to provide devices to insure that males did not enter the restroom with female customers, such as mirrors. Had Dairy Queen provided observation devices, such as mirrors, so that employees could observe who entered the restrooms, the sexual assault on Jane Doe might have been avoided.

"B.  In failing to observe the adult male who pushed Jane Doe into the men's restroom. Had defendant Dairy Queen properly monitored the whereabouts of Jane Doe and the other children and had a system in place to do so, the sexual offender who perpetrated the assault on Jane Doe would not have had the opportunity to maneuver her into a position where he could not be observed and perpetrate his sexual assault upon her.

"C.  In failing to respond to noises in the restroom. Had representatives of defendant Dairy Queen observed the adult male who pushed Jane Doe into the men's restroom, the sexual assault on Jane Doe might have been prevented.

"D.     In failing to observe that a male entered the men's restroom with plaintiff. Had representatives of defendant Dairy Queen observed the adult male who pushed Jane Doe into the men's restroom, the sexual assault on Jane Doe might have been prevented.

"E.     In failing to have adequate personnel present to supervise the patrons of the Dairy Queen given the fact that it was reasonably foreseeable that there would be numerous people coming and going from the restaurant as a result of the car wash fund-raiser. Adequate personnel might have observed the perpetrator of the sexual assault on Jane Doe and prevented said assault.

"F.     In failing to utilize security cameras to monitor the hallway leading to the restrooms. Had defendant Dairy Queen had such a security system to monitor the whereabouts of the children, including plaintiff, who needed to use the restroom facilities, the sexual assault upon Jane Doe might have been avoided[.]"

In sum, paragraphs 6 and 12 each alleged specific failures to act by Kids Inc. and Dairy Queen, respectively, and that, had defendants not failed to act, the sexual assault on plaintiff's ward could or would have been prevented. Thus, unlike in paragraph 5, paragraphs 6 and 12 do not allege any facts relating to defendants' knowledge or notice that their conduct caused a risk of foreseeable harm.

Dairy Queen moved to dismiss the complaint under ORCP 21 A(8), or, alternatively, to make paragraph 12 more definite and certain under ORCP 21 D. Kids Inc. joined in Dairy Queen's motions. Defendants argued, *inter alia*, that, as a matter of law, the complaint failed to allege facts sufficient to establish defendants' liability for the criminal conduct of a third party.[1]

---

[1] Dairy Queen also argued that the individual specifications in paragraph 12 failed to allege why or how the acts or omissions described would have prevented the criminal conduct complained of; thus, as pleaded, they alleged strict liability rather than negligence. Defendant Kids Inc. joined in that argument only as to certain of the specifications in paragraph 6; at the hearing on the motions, it acknowledged that others—specifically those outlined in 6B. and 6D.—were adequate in that respect. Because we affirm based on the insufficiency of the complaint regarding foreseeability, we do not address defendants' alternative arguments regarding causation.

In response, plaintiff argued that the complaint properly alleged a special relationship between Jane Doe and each defendant and, based on those relationships, defendants had a duty to "anticipate or guard against the intentional or criminal misconduct of others." According to plaintiff, the complaint was sufficient to establish that "defendant[s] knew, or should have known, of the risk to plaintiff's ward from a sexual predator" based on the following pleaded facts: "(1) a highly publicized event; (2) featuring teenage girls; (3) a public drive-in restaurant * * *; (4) the existence of an internet with websites such as MySpace which are frequented by sexual predators that utilize that vehicle to search the internet for victims as well as opportunities."

The court granted defendants' motions, ruling that "the harm here is going to be unforeseeable to both of the [defendants] as a matter of law," and giving plaintiff 20 days to replead. The court subsequently, on April 30, 2008, entered an order to that effect. After plaintiff did not replead within the required time period, on June 2, the court entered an order granting defendants' ORCP 21 motions and dismissing plaintiff's complaint in its entirety with prejudice. The court subsequently entered a judgment to that effect as to each defendant, and plaintiff appeals from those judgments.[2]

On appeal, plaintiff renews his argument that the facts alleged in paragraph 5, *see* 245 Or App at 269-70, viewed under the proper standard of review—that is, assuming the truth of those facts and giving plaintiff the benefit of all favorable inferences—establish foreseeability as to both defendants "based on the activity, the age and gender of the participants, the advertisement of the activity and the solicitation of strangers" and, therefore, that the trial court erred in dismissing his complaint. As we understand it, plaintiff contends that his claim of negligence against each defendant is based on that defendant's status or special relationship to plaintiff's ward—specifically, in the case of defendant Dairy Queen, the duty of a business to its business visitors and, in

_____

[2] We note that this is not a case in which plaintiff requested the trial court to defer ruling on defendants' motions to dismiss pending further discovery.

the case of Kids Inc., the duty of an organization entrusted with the supervision and care of children to those children.[3]

Defendants do not dispute that the complaint alleges the special relationships described above; but they argue that, "[b]ecause plaintiff's claim is based on [defendants'] alleged failure to prevent the criminal act of a third party, plaintiff must plead and prove that the criminal act was foreseeable to [defendants]."[4] Defendants contend, quoting *Moore v. Willis*, 307 Or 254, 259, 767 P2d 62 (1988), that plaintiff "must allege 'a set of circumstances' that explain why [defendants] should have anticipated that a crime would occur on [Dairy Queen's] premises during restaurant hours." Instead, according to defendants, "plaintiff has alleged little more than a variation on the theory that it is always foreseeable [for negligence purposes] that people commit crimes," a theory that is insufficient under current case law.

ORCP 18 A requires a plaintiff to plead "[a] plain and concise statement of the ultimate facts constituting a claim for relief." To survive a motion to dismiss, a complaint for negligence

"must allege facts from which a factfinder could determine (1) that defendant's conduct caused a foreseeable risk of

---

[3] With regard to Kids Inc., plaintiff makes one additional argument—that, because the trial court's April 30 order granted Kids Inc.'s motion to dismiss only as to certain allegations of negligence specified in paragraph 6, "[i]t is therefore incomprehensible how the trial court could then dismiss the complaint as to Kids Inc." That error, if any, was apparent after the court issued its June 2 order. Thus, plaintiff had the opportunity to challenge the error before the judgment of dismissal was entered and did not do so. We therefore reject plaintiff's argument without further discussion.

[4] Those arguments were advanced by defendant Dairy Queen; however, because defendant Kids Inc. "expressly adopts and incorporates the brief(s), answer to assignments of error, and arguments filed * * * by [Dairy Queen]," we relate those arguments as they would pertain to both defendants.

Defendant Kids Inc. also makes one additional argument independent of Dairy Queen—specifically, that plaintiff's appeal is untimely because it "attempt[s] to challenge the April [30], 2008 Circuit Court Order granting the Motions to Dismiss with leave to amend" and plaintiff did not file his notice of appeal within 30 days of that order. However, Kids Inc. also acknowledges that, "to the extent Plaintiff is attempting to challenge the July 10, 2008 Judgment, the appeal is timely." Although somewhat inscrutable, we understand Kids Inc. to be arguing that, once the trial court entered its order giving plaintiff 20 days to replead, plaintiff was required to either replead within that time frame or appeal the order. Neither of the cases Kids Inc. cites in its brief stands for that proposition, and we reject it without further discussion.

harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987); *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 606, 469 P2d 783 (1970)."

*Solberg v. Johnson*, 306 Or 484, 490-91, 760 P2d 867 (1988). Here, we are concerned with the first factor, *i.e.*, whether plaintiff alleged that defendants' failures to act "caused a foreseeable risk of harm."

Although, following *Fazzolari*, we generally analyze "a defendant's liability for harm that the defendant's conduct causes another in terms of the concept of 'reasonable forseeability,' rather than the more traditional 'duty of care,' " *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 340, 83 P3d 322 (2004), "if the plaintiff invokes a special status, relationship, or standard of conduct, then that relationship may 'create,' 'define,' or 'limit' the defendant's 'duty' to the plaintiff," *id.* at 341 (quoting *Fazzolari*, 303 Or at 17). However, even "when a plaintiff alleges a special relationship as the basis for the defendant's duty, the scope of that [particular] duty may be defined or limited by common-law principles such as foreseeability." *Oregon Steel Mills, Inc.*, 336 Or at 342 (footnote omitted); *see also Miller v. Tabor West Investment Co.*, 223 Or App 700, 706, 196 P3d 1049 (2008), *rev den*, 346 Or 184 (2009) ("[A]s was the case in *Oregon Steel Mills*, the special relationship between the defendant and the plaintiff may establish the *existence* of a duty of care on the part of defendant, but 'the *scope* of that particular duty in that particular relationship turns out to be limited to harms to plaintiff that were reasonably foreseeable.' " (quoting *Oregon Steel Mills, Inc.*, 336 Or at 341) (first emphasis in *Miller*; second emphasis in *Oregon Steel Mills, Inc.*)).

Here, plaintiff has alleged a special relationship between plaintiff's ward and each defendant;[5] accordingly, we must initially determine whether those relationships

---

[5] As noted, defendants do not dispute plaintiff's contention that the complaint invokes those relationships.

gave rise to special duties of care and, if so, the scope of those duties. *McPherson v. Oregon Dept. of Corrections*, 210 Or App 602, 609, 152 P3d 918 (2007) (outlining that approach following *Fazzolari* where special relationship is invoked).

We begin that task, first, as it applies to plaintiff's allegations against Dairy Queen. As we noted in *McPherson*, "before *Fazzolari*, Oregon courts held that a possessor of premises has a duty to protect tenants or invitees from reasonably foreseeable criminal acts of third persons." 210 Or App at 610 (citing, among other cases, *Uihlein v. Albertson's, Inc.*, 282 Or 631, 639, 580 P2d 1014 (1978), and *Torres v. United States Nat. Bank*, 65 Or App 207, 211, 670 P2d 230, *rev den*, 296 Or 237 (1983)). And, as we also observed in *McPherson*, "for purposes of determining the scope of duties in 'special relationship' cases, 'pre-existing case law has survived *Fazzolari*.' " 210 Or App at 610 (quoting *Thompson v. Klimp*, 101 Or App 127, 130, 789 P2d 696 (1990)); *see also Rex v. Albertson's, Inc.*, 102 Or App 178, 180-81, 792 P2d 1248, *rev den*, 310 Or 422 (1990) ("*Fazzolari* did not supplant existing case law concerning premises liability. The obligations of a storekeeper to a customer create a 'special relationship' that takes the claim out of the general standards of common law negligence.").

Thus, as we have held, a business has a duty to take reasonable steps to protect business visitors from reasonably foreseeable criminal conduct. *Uihlein* illustrates the analysis. In *Uihlein*, the plaintiff was injured while shopping in the defendant's retail supermarket when a man knocked her over and stole her pocketbook. 282 Or at 634. In affirming the trial court's grant of summary judgment for the defendant in the ensuing negligence action, the Supreme Court cited section 344 of the *Restatement (Second) of Torts* (1965), as well as comment f to that section, in analyzing whether the defendant had a duty to provide security to protect its customers. *Uihlein*, 282 Or at 639. Section 344 provides:

> "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals,

and by the failure of the possessor to exercise reasonable care to

"(a)    discover that such acts are being done or are likely to be done, or

"(b)    give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Comment f, in turn, explains:

"*Duty to Police Premises.* Since the possessor is not an insurer of the visitor's safety,[6] *he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur.* He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. *If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it,* and to provide a reasonably sufficient number of servants to afford a reasonable protection."[7]

(Emphasis added.)

---

[6]  This rule is explained in comment d, which provides:

"*Reasonable Care.*  A * * * possessor of land who holds it open to the public for entry for his business purposes is not an insurer of the safety of such visitors against the acts of third persons[.] He is, however, under a duty to exercise reasonable care to give them protection. In many cases a warning is sufficient care if the possessor reasonably believes that it will be enough to enable the visitor to avoid the harm, or protect himself against it. There are, however, many situations in which the possessor cannot reasonably assume that a warning will be sufficient. He is then required to exercise reasonable care to use such means of protection as are available, or to provide such means in advance because of the likelihood that third persons * * * may conduct themselves in a manner which will endanger the safety of the visitor."

[7]  Similarly, in *Torres*, discussed in more detail later in this opinion, *see* 245 Or App at 283-84, we invoked section 344 and comment f in determining whether the plaintiff, who was injured when he was shot by a robber while making a deposit in the night depository at the defendant's bank, had properly stated a negligence claim against the defendant for failing to provide adequate safeguards to protect its customers. 65 Or App at 211, 214.

Although, as the Supreme Court has stated, the *Restatements* are not necessarily authoritative, they provide useful guidance regarding the duty imposed as the result of a special relationship or status, *Park v. Hoffard*, 315 Or 624, 629 n 3, 847 P2d 852 (1993), and both this court and the Supreme Court have consistently turned to them for that purpose, *see, e.g.*, *Buchler v. Oregon Corrections Div.*, 316 Or 499, 506, 853 P2d 798 (1993) (adopting *Restatement (Second) of Torts* section 319 (1965) as Oregon's common-law rule governing custodian's duty regarding a prisoner); *Park*, 315 Or at 632 (relying on *Restatement (Second) of Torts* section 379A (1965) to define responsibility of landlord for physical harm to persons off the rental property caused by a tenant's dog); *McPherson*, 210 Or App at 610-12 (citing cases relying on various *Restatements* as reflecting the scope of the defendants' duty as landlords to protect tenants from criminal act of third person); *Dikeman v. Carla Properties, Ltd.*, 127 Or App 53, 60, 871 P2d 474 (1994) ("Although wholesale reliance on the *Restatement* is no longer the practice in Oregon, it still may provide guidance."). We see no reason to depart from that practice here. Thus, we conclude that *Restatement (Second) of Torts* section 344 and comment f state an appropriate rule with respect to a business's liability for physical harm to its business visitors caused by the criminal act of a third party: In short, a business, as a possessor of premises, has a duty to take reasonable steps to protect its visitors from reasonably foreseeable criminal acts by third persons.

We turn to plaintiff's case against Kids Inc., which alleges a special relationship based on the theory that Kids Inc., as an organization entrusted with children for supervision and care, had a duty akin to the relationship between a school and its minor students. Plaintiff fails to articulate the nature of the duty imposed by that relationship or how it bears on the analysis in this case. For guidance, we turn to *Fazzolari*, which itself involved a negligence claim against a school for failing to prevent a sexual assault on a minor student by a third party.[8] The Supreme Court made clear in

---

[8] The facts of that case are familiar: A high school student who was beaten and raped early one morning outside her school building brought an action against the school district to recover damages for her injuries. She alleged, among other things, that the district was negligent in failing to provide proper supervision of students

*Fazzolari* that schools have a special duty to students "apart from any general responsibility not unreasonably to expose people to a foreseeable risk of harm," 303 Or at 19, and that "[t]he scope of this obligation does not exclude precautions against risks of crime or torts merely because a third person inflicts the injury," *id.* at 20. At the same time, however, the court noted that schools are not strictly liable for a student's injury based on proof of causation alone. *Id.* Instead, the court held that "negligence toward a student is tested by an obligation of reasonable precautions against foreseeable risks beyond those that might apply to other persons." *Id.* Thus, although as *Fazzolari* explains, the duty to protect against risks of harm—including the risk of harm from third-party criminal acts—imposed by the special relationship is broader than that which might apply in the absence of such a relationship, that obligation does not extend to *unforeseeable* risks of harm.[9]

In sum, although each defendant may have had a special relationship with plaintiff's ward and a corresponding duty to protect against criminal conduct by third parties, that duty extended only to reasonably foreseeable criminal conduct. *See McPherson*, 210 Or App at 613 (" 'Foreseeability is an element of fault; the community deems a person to be at fault only when the injury caused by him is one which could have been anticipated because there was a reasonable likelihood that it could happen.' " (quoting *Stewart*, 255 Or at 609)). Accordingly, we turn to the question of whether, under the facts alleged in the complaint, the harm that occurred in this case was reasonably foresseable to either defendant. That is a determination that depends on the circumstances of each defendant. *See McPherson*, 210 Or App at 615, 617 (survey of "not altogether consistent" appellate cases yields just one conclusion—*viz.*, "whether a rational juror can find that harm is foreseeable, particularly in the context of criminal

---

on school grounds and in failing to provide security personnel. *Fazzolari*, 303 Or at 3.

[9] *Cf. Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or 434, 438, 760 P2d 874 (1988) ("If the defendant has a specific duty to the plaintiff, the defendant may also be liable without knowledge of the risk; that depends on the terms of the particular duty.").

activity by third parties, is an *ad hoc* determination depending on the particular circumstances of each case"). As the court explained in *Fazzolari*,

"evidence of foreseeability will differ depending on whether the risk of injury is claimed to be specific to a school, or schools generally, or a neighborhood, or a class of potential victims such as women or particular ethnic groups. Also, the character and probability of the risk that is claimed to be foreseeable bears on the steps administrators reasonably should take to avert it. A history of violence among students might call for extensive security measures within a school, while due care upon learning of occasional assaults at dispersed locations might be fully satisfied by precautionary warnings."

303 Or at 21-22 (citations omitted).[10]

Defendants argue that plaintiff's pleading is insufficient to allege the necessary foreseeability because, distilled to its essence, the complaint merely alleges a variation on the theory that crime is foreseeable, a theory that the Supreme Court disavowed in *Buchler* when it overruled *Kimbler v. Stillwell*, 303 Or 23, 734 P2d 1344 (1987). In *Buchler*, the issue was whether the state could be held liable for the criminal acts committed by a state prisoner who had escaped from a work crew using a van in which the supervisor had left the keys. 316 Or at 502. The plaintiffs relied on *Kimbler* for the proposition that the risk of harm was reasonably foreseeable. The Supreme Court rejected that argument, overruling *Kimbler*. *Buchler*, 316 Or at 510-13.

In *Kimbler*—decided the same day as *Fazzolari*—a thief broke into a store, stole a gun and ammunition, brought the gun to a different location, and shot the plaintiff's decedent. 303 Or at 25. In the plaintiff's negligence action against the storeowner, the plaintiff alleged that it was foreseeable under the circumstances that criminals might steal the guns

---

[10] In *Fazzolari*, there was evidence of a previous sexual assault on the school grounds 15 days before the attack on the plaintiff, and the plaintiff attempted to present evidence of other types of attacks. Based on that information, which was available to the defendant, the court held that "[i]t would not be wholly unreasonable for a factfinder to conclude that [precautionary] warnings should have been given" and, therefore, that the trial court erred in entering a directed verdict for the defendant. 303 Or at 22.

out of the store and shoot people with them. The Supreme Court held that the trial court erred in dismissing the complaint, reasoning that liability for the criminal act of a third person is not foreclosed "if such an act was a foreseeable risk *facilitated* by the defendant's alleged negligence." *Id*. at 27-28 (emphasis added).[11] The court concluded that the plaintiff's allegations "with respect to foreseeable risks that firearms known to be lightly secured in a retail store might be stolen and used against third persons" were thus sufficient to state a claim for negligence. *Id*. at 29.

In *Buchler*, however, the court disavowed the "facilitation" rationale of *Kimbler*, stating:

"An intervening criminal instrumentality caused the harm and created the risk in that case, as in the present case. *While it is generally foreseeable that criminals may commit crimes and that prisoners may escape and engage in criminal activity while at large, that level of foreseeability does not make the criminal's acts the legal responsibility of everyone who may have contributed in some way to the criminal opportunity.* In other words, in our society it is foreseeable that crimes may occur and that the criminals perpetuating them may cause harm. Thus, in a general sense, it is foreseeable that anyone whose conduct may in any way facilitate the criminal in committing the crime has played some part in the resulting harm. *But, mere 'facilitation' of an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, does not cause the harm so as to support liability for it.*"

316 Or at 511-12 (emphasis added; footnote omitted). As the court explained, "being charged with responsibility for all intervening intentional criminal conduct that might conceivably occur" was inconsistent with "a foreseeability analysis that requires that a defendant, to be liable, must have *unreasonably* created the risk of the sort of harm to plaintiff that befell him."[12] *Id*. at 511 (emphasis in original). The *Buchler*

---

[11] In *Kimbler*, the plaintiff claimed no particular duty, but relied on common-law rules of liability for foreseeable harm. 303 Or at 26.

[12] In retreating from the "facilitation" rule announced in *Kimbler*, the Supreme Court noted that the facts of *Kimbler* were not "within the ambit of traditional negligence liability of a defendant who places another person in peril during the time when the defendant was under a duty or responsibility to provide services to the plaintiff with safety." *Buchler*, 316 Or at 510. However, we do not

court described the plaintiff's complaint in *Kimbler* as alleging "that guns are dangerous, that thieves steal them, that 'as a matter of common knowledge' stolen firearms are used to commit other crimes against third parties, and that the defendant store failed to take additional precautions to prevent theft of the guns with which plaintiff was later and elsewhere harmed," *id.*, and concluded that those allegations did not "fit within the requirement that defendant's 'facilitation' rise to the level of unreasonably creating the risk of the sort of harm that befell plaintiff," *id.* at 513. *Buchler* thus establishes that the generic fact that criminals may commit crimes does not suffice to make the risk of a particular crime reasonably foreseeable for negligence purposes.

In *Moore*, the Supreme Court examined what is necessary to plead that a defendant "should have known" of a risk of harm. There, the plaintiff sought damages from tavern owners who allegedly were negligent in serving alcohol to two visibly intoxicated customers (one of whom was also underage) who later killed the plaintiff's decedent, a taxi driver who was called to the tavern to pick them up. 307 Or at 256. Examining the allegations necessary to establish the foreseeability element of negligence, the court observed that an allegation that a defendant "should have known something" is not an allegation of fact but "a conclusion drawn from other facts." *Id.* at 259. Thus, "[w]hen a plaintiff claims that a risk was foreseeable, though not necessarily foreseen, the plaintiff must allege facts that would allow the factfinder to conclude that the defendant should have known of the risk." *Id.* (citing ORCP 18 A; *Solberg*, 306 Or at 490).

In *Moore*, the complaint fell short because there were no allegations from which a factfinder could infer that the defendants had reason to know that serving alcohol to the intoxicated men would cause them to become violent. *Id.* at 260. The court explained:

"It may be common for intoxicated and underage drinkers to become violent. If violence is common among intoxicated

understand the court to be implying by that statement that mere "facilitation" of criminal conduct is sufficient to impose liability in all "special relationship" cases. Instead, as the Supreme Court has instructed, the scope of the duty imposed by a particular special relationship is dictated by its terms. *Fuhrer*, 306 Or at 438.

and underage drinkers, those who are in the business of serving alcohol and who frequently observe people's reaction to alcohol may have reason to foresee the type of harm that arose in this case. *At the pleading stage, however, a court cannot simply assume that it is common for intoxicated or underage drinkers to become violent in order to support an inference that violence is a foreseeable result of serving alcohol to someone who is intoxicated.* If the plaintiff claims that the defendants had reason to know that [the men who killed the decedent] would become violent because those who are in the business of serving alcohol know that visibly intoxicated and underage drinkers frequently become violent, the plaintiff must allege that intoxicated and underage drinkers frequently become violent. Because the plaintiff failed to do so, the complaint does not state a claim for relief."

*Id.* at 260-61 (emphasis added; citation omitted).

In *Torres,* on the other hand, we concluded that the complaint was sufficient to plead the defendant's knowledge or notice of the risk of harm. 65 Or App at 214. In that case, as noted, the plaintiff was injured by a robber while making a deposit at the defendant's night depository. The plaintiff had alleged that the bank

"knew or should have known that the design of the bank and the hidden location of the depository exposed users of the depository to an unreasonable risk of criminal aggression and that it was under a duty to make visible the area of the depository, because it is common knowledge that visibility deters criminal activity; that the bank negligently eliminated the deterrent affect [*sic*] of visibility; that plaintiff's employer had previously experienced robbery hazards at a depository at another of defendant's branch banks, had moved his account and had been assured of greater safety; and that defendant knew of the hazards inherent in depository banking but failed to make adequate safeguards to protect its customers."

*Id.* at 209. We held that the complaint thus stated facts that, if true, could establish that the bank "should reasonably have anticipated criminal conduct against its invitees," referencing the defendant's duty to take precautions against such dangers "if evidence is produced that, due to 'the place or character of his business, or his past experience,' a defendant

could reasonably foresee that a plaintiff's safety may be endangered." *Id.* at 214 (quoting *Restatement (Second) of Torts* § 344 comment f (1965)). Based on those allegations, we noted that the plaintiff might have been able to introduce evidence that, for example, there had been robberies at other night depositories in the area or evidence comparing the occurrence of robberies at depositories that were hidden versus those located in public view, or to show other circumstances that would permit the jury to find that the defendant "should have known that there was a likelihood that its business invitees would be endangered at this depository after regular banking hours by the criminal acts of third parties." *Id.* at 214-15.

Applying those principles to this case, plaintiff's complaint alleges that each defendant knew or should have known that "there was a reasonable probability that people harboring criminal intent to do harm or injury to children might enter onto the premises for the purpose of making contact with potential underage victims." The facts supporting the allegation of foreseeability were that (1) the car wash was advertised, (2) teenage girls would be present at the car wash, and (3) sexual predators might have had Internet contact with the teenage girls.

Thus, like the discredited theory in *Kimbler* (that, because criminals are likely to steal guns and harm people with them, the defendants display of the guns and observable lack of security measures created an unreasonable risk that someone would be shot as a result of a burglary or theft of the store), plaintiff's complaint here can be understood to allege—drawing all inferences in his favor—that, because sexual predators are likely to assault teenage girls, each defendant created an unreasonable risk of sexual assault by having an advertised car wash involving teenage girls and failing to take the actions identified in paragraphs 6 and 12, respectively. Indeed, as plaintiff summarizes, his claim was that,

"[u]nfortunately, in the day and age, criminal conduct is foreseeable. The allegations of this complaint establish a factual groundwork from which any reasonable person,

"whether it be a parent, coach, teacher or prudent business-man should be ever vigilant for potential criminal conduct. The world is full of sexual predators. The internet has expanded the reach of sexual predators."

In that respect, the allegations pleaded in this case are materially indistinguishable from those ultimately held inadequate to state a claim in *Kimbler*.

With respect to Dairy Queen, plaintiff alleged the additional fact that Dairy Queen "holds itself out to the general public as a restaurant suitable for families and children." From that fact, together with the allegations stated above, we understand plaintiff to be arguing that we can infer that the "place or character" of the Dairy Queen due to the event of the car wash, *see Restatement (Second) of Torts* § 344 comment f (1965) (anticipation of criminal conduct by a third party can arise as the result of "the place or character of [the possessor's] business"), was such that Dairy Queen should have foreseen an unreasonable risk of a sexual attack on one of the participants. We disagree that such an inference is permissible.

First, as we know from *Moore*, if plaintiff is claiming that defendant Dairy Queen had reason to know of the risk that a sexual predator would attack a young girl in the restroom of the restaurant during the car wash because those who are in the family restaurant business should know that widely advertising an event where minors will be present is likely to attract sexual predators, plaintiff must allege that sexual predators frequently look for, and respond to, such opportunities. Plaintiff did not do so in this case. The complaint alleges that the car wash was advertised, that strangers were solicited to attend, and that teenage girls would be present. Those facts would not allow a determination that defendant Dairy Queen should have known that, by its conduct in failing to take the specified security measures, there was an unreasonable risk that a sexual predator would attend the car wash and assault one of the participants.

Second, unlike in *Torres*, plaintiff here alleges no facts from which it could be determined that Dairy Queen should have known that sexual assault was a "hazard[ ] inherent" in holding a car wash involving teenage girls on its

premises. Nor does plaintiff allege that Dairy Queen had specific knowledge or even that it was "common knowledge" that cameras and mirrors and other monitoring of restaurant restrooms and patrons are likely to deter the sort of criminal activity that occurred in this case.[13]

In sum, the fact that plaintiff's pleading does not allege is why either defendant knew or should have known that they needed to protect against this hazard, or, more specifically, why a jury could find that defendants were on reasonable notice that, by not taking the precautions alleged, they were creating an unreasonable risk that such a hazard would occur. The complaint alleges nothing more than a theoretical possibility that such a harm might occur; for example, there are no allegations of fact that sexual assault occurs at these types of sites, or among gatherings of teenagers in public places, or that sexual assault is a "hazard[ ] inherent" in this type of activity. *Torres*, 65 Or App at 214. Essentially, the complaint makes the generic assumption that defendants should have known about the risk of harm of sexual attack, without alleging any facts to support that assumption. Just as "the fact that escaped prisoners may engage in criminal activity does not make a particular criminal act reasonably foreseeable," *Fraker v. Benton County Sheriff's Office*, 214 Or App 473, 492, 166 P3d 1137, *adh'd to on recons*, 217 Or App 159, 174 P3d 1111 (2007) (citing *Buchler*, 316 Or at 511), the fact that sexual predators in the community may commit crimes does not make a particular crime reasonably foreseeable. As in *Moore*, "a court cannot simply *assume* that it is common" for sexual predators to prey on young girls at activities such as public car washes to support an inference that there was an unreasonable risk that the sexual assault in this case would occur. For that reason, we conclude that the trial court did not err in dismissing plaintiff's complaint in this case on the basis that the harm that befell plaintiff's ward was unforeseeable to both defendants as a matter of law.

Affirmed.

---

[13] In all events, *Torres* was decided before *Moore*; in light of the Supreme Court's subsequent explanation in *Moore* of the rigors of pleading foreseeability in the context of third-party criminal conduct, *Torres* provides no support for plaintiff's position that the court erred in dismissing his complaint against Dairy Queen.