**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 5 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

MARK COONROD, an individual,

Plaintiff-Appellant,

v.

COLUMBUS MCKINNON
CORPORATION, a foreign business
corporation,

Defendant-Appellee,

v.

KONECRANES, INC., a foreign business
corporation,

Defendant-third-party-
plaintiff-Appellee.

No.    23-35215

D.C. No. 3:18-cv-01530-AR

MEMORANDUM*

Appeal from the United States District Court
for the District of Oregon
Jeffrey Armistead, Magistrate Judge, Presiding

Argued and Submitted April 4, 2024
Portland, Oregon

Before:  OWENS and FRIEDLAND, Circuit Judges, and RAYES,** District Judge.

---

\*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Appellant Mark Coonrod worked as a welder fitter for Pierce Pacific Manufacturing ("Pierce"). His job required him to use a crane equipped with a hoist and mounting hook to move heavy parts onto his workstation. Coonrod was injured on July 13, 2016, after the hoist came loose from its mounting hook and struck him on his head. Subsequent investigations determined that a factory-approved screw used to secure the mounting hook to the body of the hoist had at an unknown time been replaced with a non-conforming screw, which wiggled loose because unlike the factory-approved screw, it was too long and lacked an adhesive coating called Loctite that would have prevented it from backing out of its retaining hole.

Appellee Columbus McKinnon Corporation ("CMC") designed and manufactured the hoist, and Appellee Konecranes Incorporated ("Konecranes") sold it to Pierce and performed repairs on it over a year before the accident. Coonrod alleges that the hoist was defectively designed and unreasonably dangerous, that CMC and Konecranes failed to adequately warn of the dangers of replacing the factory-approved screw with a non-conforming screw, and that Konecranes either installed the non-conforming screw when it repaired the hoist or failed to adequately inspect the hoist and uncover the defect.

---

** The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

The district court granted summary judgment in favor of CMC and Konecranes. We have jurisdiction under 28 U.S.C. § 1291 and review de novo. *Nodine v. Shiley Inc.*, 240 F.3d 1149, 1152 (9th Cir. 2001). We affirm in part, reverse in part, and remand for further proceedings.

## I.      Strict Products Liability

Oregon law imposes strict liability on a seller for injuries caused by its product if that product is defective and unreasonably dangerous. Or. Rev. Stat. § 30.920(1). Dangerousness is assessed using a consumer-expectations test, under which "the plaintiff must prove that, when the product left the defendant's hands, the product was defective and dangerous to an extent beyond that which the ordinary consumer would have expected." *McCathern v. Toyota Motor Corp.*, 23 P.3d 320, 332 (Or. 2001).

Coonrod argues the hoist was defective and unreasonably dangerous because it (1) was designed with inadequate safety redundancies, such as torque markers or the use of three screws instead of one to affix the mounting hook to the hoist's body, and (2) lacked an adequate warning about the dangers of replacing the factory-approved screw with a non-conforming screw.

If it is foreseeable that a consumer will modify a product in a dangerous way and that modification causes a consumer's injury, a manufacturer can be liable for failing to adequately warn the consumer that the modification is dangerous and

3

failing to design the product to ameliorate that danger. *E.g.*, *Anderson v. Klix Chem. Co.*, 472 P.2d 806, 811 (Or. 1970), *abrogated on other grounds by Phillips v. Kimwood Mach. Co.*, 525 P.2d 1033 (Or. 1974); 1 *Torts (OSB)* § 20.5-1(e)(3) (Oregon State Bar 2012) ("Foreseeable misuse cannot be a defense if it was preventable by design changes or better warnings or instructions.").

Coonrod's expert, Scott Buske, opined that it was foreseeable someone servicing the hoist would replace the factory-approved screw with a non-conforming screw that lacked Loctite coating because "[s]crews and bolts are usually interchangeable." Thus, viewing the facts in the light most favorable to Coonrod, a jury could find that the modification here was foreseeable. *McPherson v. State ex rel. Dep't of Corr.*, 152 P.3d 918, 924 (Or. Ct. App. 2007) ("Ordinarily, foreseeability is a fact question for the jury.").

If the modification was foreseeable, a jury could find that the hoist was dangerously defective because it lacked adequate safety redundancies and lacked an adequate warning. The safe operation of the hoist depended on one screw to securely affix the mounting hook. Using a Loctite-coated screw of appropriate length was critical to ensuring that this single screw remained secured. If it was foreseeable that consumers would not use such a screw, a jury could find that the hoist should have had other means of securing the mounting hook to the hoist. A jury could also find the warning against using a non-conforming screw was

4

inadequate.  The hoist's operations manual advised in three different sections that only factory-approved replacement parts should be used when servicing or repairing the hoist.  However, Buske opined that a generic warning—found only in the operations manual—to use only factory-approved parts was insufficient, and a more specific warning to use only a Loctite-coated screw should have been given. Buske's opinion creates a genuine and material factual dispute over the adequacy of the warning.  *See Benjamin v. Wal-Mart Stores, Inc*, 61 P.3d 257, 264–65 (Or. Ct. App. 2002) ("A warning's adequacy is a proper subject of expert testimony."). Viewing the facts in the light most favorable to Coonrod, a reasonable jury could find it foreseeable that the generic warning to use only factory-approved replacement parts did not adequately inform users of the dangers of using a different screw.  *See id.* at 264  ("[A] warning is adequate when it is 'in such a form that it could reasonably be expected to catch the attention of the reasonably prudent [person] in the circumstances of its use' and the content of the warning is 'of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person.'" (emphasis omitted) (quoting *Anderson*, 472 P.2d at 810)).[1]

---

[1] *Seeborg v. General Motors Corp.*, 588 P.2d 1100 (Or. 1978), is distinguishable because the manufacturer there had warned the consumer against inserting a stronger fuse, and that warning was "adequate to keep the original defect in the wiring from being dangerously defective because of the possibility of

CMC and Konecranes argue that even if Coonrod can establish a prima facie case, we should affirm based on their statutory affirmative defense. *See Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008) ("We may affirm for any reason supported by the record."). We disagree. Oregon law affords a seller a complete defense if a post-sale modification (1) "was made without the consent of or was made not in accordance with the instructions or specifications of the manufacturer, distributor, [or] seller"; (2) "was a substantial contributing factor to the personal injury"; and (3) "[i]f the alteration or modification was reasonably foreseeable, the manufacturer, distributor, seller or lessor gave adequate warning." Or. Rev. Stat. § 30.915. Buske's opinion creates a genuine and material factual dispute on the third element, specifically over the foreseeability of someone replacing the factory-approved screw with a non-conforming screw and the adequacy of the warning given. *See Lavoie v. Power Auto, Inc.*, 312 P.3d 601, 607–08 (Or. Ct. App. 2013) (denying summary judgment based on a statutory modification affirmative defense where jurors could reasonably find that the seller failed to adequately warn of the danger of a foreseeable modification).

---

the insertion of a stronger fuse," *see id.* at 1105. Here, there is a genuine dispute of fact as to whether the warning was adequate.

6

## II. Negligence

Under Oregon law, "[a] product liability civil action 'embraces all theories a plaintiff can claim in an action based on a product defect,' including . . . negligence [and] strict liability[.]" *Simonsen v. Ford Motor Co.*, 102 P.3d 710, 714–15 (Or. Ct. App. 2004) (citations omitted). To prevail on a negligence claim, a plaintiff must prove:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Stewart v. Kids Inc. of Dallas, OR*, 261 P.3d 1272, 1277 (Or. Ct. App. 2011) (citation omitted). "When a defendant's negligence is a factual cause of harm to the plaintiff, the defendant is subject to liability to the plaintiff as long as the harm that the plaintiff suffered was a reasonably foreseeable result of the defendant's negligence." *Lasley v. Combined Transp., Inc.*, 261 P.3d 1215, 1219 (Or. 2011). Generally, "the application of either the theory of strict liability or of negligence seldom leads to different conclusions." *Roach v. Kononen*, 525 P.2d 125, 129 (Or. 1974).

That general trend holds true here. Coonrod asserts negligence claims against CMC and Konecranes based on substantially the same allegations that

7

underpin his strict products liability claims. We hold the district court erred in granting summary judgment on those negligence claims because Buske's expert opinion creates a genuine and material factual dispute over the foreseeability of the modification and reasonableness of the warning to use only factory-approved replacement parts.

Separately, Coonrod alleges that Konecranes acted negligently by either (1) installing the non-conforming screw or (2) failing to conduct an adequate inspection of the hoist, which Coonrod believes would have led to the discovery of the non-conforming screw. The district court properly granted summary judgment on this aspect of Coonrod's negligence claim against Konecranes. There is no record evidence that Konecranes installed the non-conforming screw, or indicating when or how the factory-approved screw was replaced with the non-conforming screw. The evidence shows that in December 2014, Pierce sent the hoist to Konecranes for repairs, none of which involved the mounting hook suspension. Konecranes completed the repairs in early 2015 and included in the invoice a detailed list of the repairs and parts used. The subject screw was not among them. To find Konecranes liable, a jury would have to speculate either that Konecranes installed the non-conforming screw, or that the non-conforming screw had been installed before Konecranes serviced the hoist in early 2015, and not sometime

after Konecranes returned it to Pierce.  Coonrod cannot defeat a summary judgment motion with mere speculation.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings.**