Argued June 3, affirmed July 24, 1968

KOR, *Appellant, v.* SUGG ET AL, *Respondents.*

443 P. 2d 641

*Raymond J. Conboy,* Portland, argued the cause for appellant. With him on the briefs were Pozzi, Levin & Wilson, Portland.

*Arthur S. Vosburg,* Portland, argued the cause for respondents. On the brief were Vosburg, Joss & Bosch, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is an action to recover damages for personal injuries suffered by plaintiff. Plaintiff appeals from a judgment of involuntary nonsuit.

Plaintiff, a ten-year-old boy, was severely burned when his playmate, defendant Jeffrey Sugg, kicked a can of flaming gasoline onto his clothing. Plaintiff was injured while playing in the yard at the residence of defendants Herbert and Gloria Sugg, neither of whom was present when the accident occurred. Before leaving home to join her husband who had departed earlier in the day Gloria Sugg instructed her eleven-year-old son Jeffrey to rake the leaves in the driveway. She directed him to burn these leaves and other leaves which had been raked and piled on the previous week-end but which had been too wet to burn at that time. Mrs. Sugg told her seventeen-year-old daughter Kathy of her instructions to Jeffrey but did not caution her to supervise the burning of the leaves. Jeffrey attempted to kindle a fire with newspaper but

he was unsuccessful because the leaves were too damp. He then went to the garage and poured some gasoline into a plastic pail from a gasoline container which the Sugg's used as a fuel supply for a power lawnmower and leaf sweeper. Jeffrey poured some of the gasoline over the leaves and in this manner was able to start them burning.

When the plaintiff arrived at the Sugg home Jeffrey and his younger brother Calvin were engaged in playing a game with a small plastic soldier placed on the end of a stick. They dipped the toy soldier in gasoline, propped it upright with the stick, and poured a trail of gasoline away from the soldier. They then ignited the gasoline with the object of watching the soldier burn. On the first attempt the fire went out before it reached the soldier. Plaintiff joined Jeffrey and Calvin and they explained the game to him. Again the toy soldier was dipped into the pail of gasoline, but this time it came off the stick. According to the testimony of a fourth boy who viewed the activities but did not participate, plaintiff reached into the pail, withdrew the soldier and wiped the gasoline from his hands onto his trouser legs. The boys then attempted to burn the soldier by the same method employed in their first effort. This time the trail of gasoline and the toy soldier burned, but the plastic pail containing the gasoline also burst into flames near defendant Jeffrey Sugg. Jeffrey kicked the pail and it struck the plaintiff in the stomach, igniting his clothes and inflicting the burns for which plaintiff brings the action.

At the conclusion of plaintiff's case defendants each moved for a judgment of involuntary nonsuit which the trial court granted.

■■ Plaintiff and defendants are all domiciled in

Washington where the accident occurred. The parties agree that the law of the state of Washington governs the substantive issues in this proceeding. There are no Washington cases closely related to the facts in the instant case, and consequently we must apply the law of negligence in the manner in which we assume the Washington courts would apply it.

■ The trial court based its order granting defendants' motion for an involuntary nonsuit against defendant Jeffrey Sugg on the ground that whatever standard of conduct is set in determining the negligence of children, the same standard would be applicable to both plaintiff and defendant Jeffrey Sugg under the circumstances of this case where it was shown that plaintiff had at least the same capacity as Jeffrey Sugg to appreciate the risks involved in the game in which they participated. Thus it would follow that either both children were free from negligence or both were negligent and in the latter case plaintiff would be barred by contributory negligence. We agree with this reasoning.

■ Plaintiff argues that the risk which he assumed did not embrace the risk of having a pail of flaming gasoline kicked against him by his playmate. We think that the likelihood of such an occurrence was inseparable from the other dangers attendant upon the use of the gasoline and plaintiff assumed the risk of harm flowing from Jeffrey's conduct along with the other risks of the game.

Plaintiff also contends that the trial court erred in granting the motion for an involuntary nonsuit in the action against defendants Gloria and Herbert Sugg. It is plaintiff's position that defendants Gloria and Herbert Sugg are liable for the injuries caused by Jeffrey on either one of two grounds: (1) that Jeffrey

was the servant of his parents in burning the leaves, in the course of which he negligently injured plaintiff; and (2) that Gloria and Herbert were negligent in leaving in their garage available to children a can of gasoline which plaintiff describes as a "highly dangerous instrumentality."

■ The liability asserted under the first ground is predicated upon the doctrine of respondeat superior. Inasmuch as we hold that the servant, Jeffrey, is not liable it follows that his parents as masters cannot be held liable, since their liability under the doctrine of respondeat superior is derivative only.

■ The second ground presents a more difficult question. Normally the question of whether a defendant is negligent under particular circumstances is for the jury. However, the question of negligence is withheld from the jury if the court decides that the defendant has no duty to the plaintiff in the type of case before it. The court arrives at its conclusion as to whether there is a duty in the type of case before it by making an appraisal of the community standards. If, through that appraisal of the community's attitude, the court can discern that reasonable men would regard a certain type of conduct as free from fault, the court will declare as a matter of law that no duty exists. And at the other end of the spectrum, if the court can discern that the conduct clearly falls below the community standard, the court will rule as a matter of law that a duty does exist. In this process of appraisal the two principal factors which must be weighed are the utility of defendant's conduct and the risk of harm which the conduct generates.

■ Employing the foregoing analysis we hold that under ordinary circumstances in the use of residential property the occupant does not breach a duty

to others, including children, merely by storing a can of gasoline in his garage and even though he knows that it is accessible to his own children. There is a widespread use of gasoline in lawnmowers and other garden equipment. Those who use gasoline for such purposes need not assume that children are likely to search it out and employ it for dangerous purposes, unless the circumstances are such as to give the owner a special warning. Gasoline is dangerous only if it is brought into contact with something which will ignite it. Children are burned by it only if they engage in some conduct other than removing it from the place it is stored and by their own conduct in exposing it to a catalyst. Most children know that fire is dangerous. Many children know the special dangers of gasoline if ignited. The evidence establishes that plaintiff in this case had that knowledge. In the absence of circumstances giving the owner warning of a special danger he may assume that his children and others will take account of these known dangers.

We do not think that there were any special circumstances in the present case which would permit the jury to hold that defendants Gloria and Herbert Sugg were negligent in leaving a can of gasoline in the family garage. Even if it were assumed that Mrs. Sugg's order to burn the leaves could be regarded as an authorization to Jeffrey to use gasoline for that purpose, the use of the gasoline in the children's game was not authorized nor was it sufficiently connected with the job of burning the leaves to make it a foreseeable consequence of Mrs. Sugg's direction to her son.

The judgment of the lower court is affirmed.