Argued and submitted May 8, 2013, affirmed June 11, petition for review allowed October 23, 2014 (356 Or 400)

Jason CHAPMAN
and Richard Gilbertson,
*Plaintiffs-Appellants*

*v.*

Carroll MAYFIELD,
Gresham Players Club,
and Grant Baughman,
*Defendants,*

*and*

FRATERNAL ORDER OF EAGLES GRESHAM
AERIE #2151 GRESHAM OREGON,
dba Eagles Lodge #2151 Gresham,
*Defendant-Respondent.*

Multnomah County Circuit Court
101216919; A150341

329 P3d 12

J. Randolph Pickett argued the case for appellants. With him on the briefs were R. Brendan Dummigan, Kristen West, Kimberly O. Weingart, and Pickett Dummigan LLP.

Jonathan Henderson argued the cause for respondent. With him on the brief were Nicole M. Rhoades, Daniel S. Hasson, and Davis Rothwell Earle & Xochihua, P. C.

Before Nakamoto, Presiding Judge, and Egan, Judge, and Lagesen, Judge.*

LAGESEN, J.

Egan, J., dissenting.

_____

* Lagesen, J., *vice* Armstrong, P. J.

## LAGESEN, J.

Carroll Mayfield went on a drinking binge, which included a stop at the Eagles Lodge #2151 Gresham. There, he was served whiskey and beer over the course of several hours. Mayfield later visited the Gresham Players Club, where he shot and injured plaintiffs Jason Chapman and Richard Gilbertson. Plaintiffs sued Mayfield, the Eagles Lodge, the Gresham Players Club, and Mayfield's friend Grant Baughman, asserting claims for common-law negligence and seeking damages resulting from the shooting. With respect to the Eagles Lodge (hereinafter "defendant"[1]), plaintiffs alleged that defendant negligently served Mayfield while he was visibly intoxicated, leading to the shooting. The trial court granted summary judgment to defendant on the ground that plaintiffs had not presented evidence sufficient to create a factual dispute as to whether Mayfield's act of shooting plaintiffs was the foreseeable result of defendant's act of serving alcohol to Mayfield while he was visibly intoxicated. We affirm.

On review of a trial court's grant of summary judgment, "we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to * * * the party opposing the motion." *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Summary judgment is proper only "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 638, 20 P3d 180 (2001) (citing ORCP 47 C). "A genuine issue of material fact is lacking when 'no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment.'" *Id.* at 638-39 (quoting ORCP 47 C). Because plaintiffs would have had the burden of proof at trial, to withstand defendant's motion for summary judgment, plaintiffs had the burden of producing admissible evidence establishing "facts that by themselves or by their reasonable inferences could cause a reasonable juror" to find each element of plaintiffs' claim. *O'Dee v. Tri-County*

---

[1] The Eagles Lodge is the only defendant that is a party to this appeal.

*Metropolitan Trans. Dist.*, 212 Or App 456, 460-61, 463, 157 P3d 1272 (2007); *see Brant v. Tri-Met*, 230 Or App 97, 103, 213 P3d 869 (2009) (on a defendant's motion for summary judgment in a negligence case based on the standard of care, "the question is whether [the] plaintiff produced sufficient evidence to allow a jury to find that the [defendant] was negligent"); *see also Hagler v. Coastal Farm Holdings, Inc.*, 354 Or 132, 140, 144-47, 309 P3d 1073 (2013) (discussing a plaintiff's evidentiary burden to avoid summary judgment in a negligence case).

Under Oregon law, a tavern owner that negligently serves alcohol to a visibly intoxicated person may be liable for injuries to a third party resulting from the visibly intoxicated person's violent conduct, if it was foreseeable to the tavern owner that serving the person would create an unreasonable risk of violent conduct. *Moore v. Willis*, 307 Or 254, 767 P2d 62 (1988); *Hawkins v. Conklin*, 307 Or 262, 768 P2d 66 (1988); *Sparks v. Warren*, 122 Or App 136, 856 P2d 337 (1993). "The fact that someone is visibly intoxicated * * *, standing alone, does not make it foreseeable that serving alcohol to the person creates an unreasonable risk that the person will become violent." *Moore*, 307 Or at 260.

Rather, to establish foreseeability, a plaintiff must first plead and then prove specific facts—beyond the fact of visible intoxication—from which an objectively reasonable factfinder could find or reasonably infer that the tavern owner who served the visibly intoxicated person knew or had reason to know that serving that person created the unreasonable risk that that person would become violent. *See id.* at 260-61 ("[b]ecause there [were] no allegations of facts from which a factfinder could infer that [the particular] defendants had reason to know that serving alcohol to [the visibly intoxicated persons at issue] would cause them to become violent," the plaintiff's allegations were insufficient to establish foreseeability); *Hawkins*, 307 Or at 269 (the plaintiff's allegations were insufficient to establish foreseeability where the plaintiff did not allege facts showing "that the defendant knew about the [visibly intoxicated person's] threats and unruly conduct or that the defendant

otherwise had reason to know of [the visibly intoxicated person's] violent propensities at the time the defendant served alcohol to [the visibly intoxicated person]"); *Sparks*, 122 Or App at 139-40 (the plaintiff's evidence was insufficient to establish foreseeability at the summary judgment stage of the case where the plaintiff presented "no evidence" showing that the defendants knew or should have known that if they negligently failed to prohibit consumption of alcohol by minors, "underage drinkers or [the underage drinker at issue] would become violent"). As the Supreme Court recognized in *Moore*, a plaintiff can do that by proving facts showing that a tavern owner's general observations and experiences "in the business of serving alcohol" gave that tavern owner reason to know that violence would be a foreseeable result of serving alcohol to a visibly intoxicated person. 307 Or at 260-61. Alternatively, a plaintiff can establish foreseeability by proving facts showing that the tavern owner knew or had reason to know that the visibly intoxicated person in question had a propensity for violence that could be incited by further drinking. *Hawkins*, 307 Or at 269.

Here, in opposing defendant's summary judgment motion, plaintiffs did not present evidence that would permit a reasonable factfinder to find or infer the facts that *Moore* requires. At this point, it is undisputed that defendant did not know or have reason to know any specific facts about Mayfield that would make his violent conduct foreseeable. Instead, plaintiffs' theory of foreseeability, as alleged in the complaint, is that defendant had reason to know that serving Mayfield while he was visibly intoxicated created an unreasonable risk of violence "because those who are in the business of serving alcohol know that visibly intoxicated drinkers frequently become violent." The only evidence that plaintiffs submitted in support of that "reason-to-know" theory of foreseeability consists of (1) a declaration from Dr. Brady—a medical doctor with expertise in "alcohol physiology and effects"—stating that he could testify to "a degree of reasonable medical certainty" to, among other things, the facts that "[i]ntoxicated drinkers frequently become violent," and "[t]he link between visible intoxication and increased levels of violence has been well-established in the medical, scientific, and lay literature for decades, if not

more than a century";[2] and (2) the deposition testimony of a bartender from a different bar down the street that, when a bar patron becomes violent, "[t]hat's the alcohol talking." But that evidence is insufficient to permit a rational factfinder to make the finding that *Moore* requires—in this instance, a finding that defendant, by virtue of the fact that it was in the business of serving alcohol, was on notice that serving a visibly intoxicated person created an unreasonable risk that the person would become violent. *See, e.g., Stewart v. Kids Incorporated of Dallas, OR*, 245 Or App 267, 283, 261 P3d 1272 (2011), *rev dismissed as improvidently allowed*, 353 Or 104 (2012) (equating requirement that a plaintiff demonstrate that the defendant "knew or should have known" of a risk of harm with a requirement that a plaintiff demonstrate that the defendant was on notice of the risk of harm).

Viewing the evidence and the reasonable inferences therefrom in the light most favorable to plaintiffs, and resolving any conflicts in the evidence in favor of plaintiffs, the following story emerges from the summary judgment record in this case:

- Prior to the night in question, defendant had served visibly intoxicated patrons.

- Prior to the night in question, defendant had not experienced any incidents of violence involving persons to whom defendant served alcohol.

---

[2] Although defendant argues otherwise, the transcript reflects that the trial court struck one sentence in the expert's declaration for lack of foundation. In that sentence, the expert opined, "Those who are in the business of serving alcohol know that visibly intoxicated persons frequently become violent." On appeal, the parties disagree both as to the scope of the trial court's evidentiary ruling and its correctness. Defendant argues that the entirety of the paragraph in the expert's declaration addressing the link between alcohol and violence was inadmissible; plaintiffs argue—in their reply brief only—that the trial court erred by striking that one sentence. However, neither party has assigned error to the trial court's evidentiary ruling in the manner required by our rules, ORAP 5.45 (governing assignments of error) and ORAP 5.57 (governing cross-assignments of error). For that reason, we decline to review the correctness of the trial court's ruling on the motion to strike, and review the trial court's ruling on summary judgment on a record that excludes the stricken portion of the expert's affidavit and includes the portions of the affidavit that were not stricken. *See, e.g., State v. Drummond*, 137 Or App 168, 173, 903 P2d 925 (1995) (declining to consider arguments regarding admissibility of evidence absent separate assignment of error addressing trial court's evidentiary ruling); *Oregon Occupational Safety v. Marv's Utility*, 128 Or App 204, 209, 875 P2d 531 (1994) (same, in agency context).

- Defendant's clientele consists of "low-key, very friendly people."

- Mayfield had not been to defendant prior to the night in question.

- Defendant served Mayfield while he was visibly intoxicated.

- Medical professionals with expertise in alcohol physiology and effects have recognized a link between intoxication and violence, and are aware that "intoxicated drinkers frequently become violent."

- A variety of "medical, scientific, and lay literature" has long reported on "[t]he link between visible intoxication and increased levels of violence."

- A bartender in a different bar down the street from defendant has observed that violence occurs in his bar "once a month max" and that when it does, "[t]hat's the alcohol talking."

Those facts do not show directly that defendant knew that serving alcohol to Mayfield while he was visibly intoxicated created an unreasonable risk that he would behave violently. Accordingly, under *Moore*, the question is whether it rationally can be inferred from those facts that defendant should have known—that is, was on notice of the fact—that serving Mayfield while he was visibly intoxicated created the unreasonable risk that he would become violent. It cannot.

We have adopted the standard applied by the federal courts to determine whether a particular inference is a reasonable one or is, instead, impermissible speculation. *See State v. Guckert*, 260 Or App 50, 56, 316 P3d 373 (2013), *rev den*, 354 Or 840 (2014); *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). Under that standard:

"The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is

given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts."

*Bivins*, 191 Or App at 467 (quoting *Tose v. First Pennsylvania Bank, N.A.*, 648 F2d 879, 895 (3rd Cir), *cert den*, 454 US 893 (1981)) (internal quotation marks omitted).

Here, the conclusion that defendant should have known that serving Mayfield while he was visibly intoxicated would lead to the unreasonable risk that Mayfield would act violently is not a rational inference because it does not follow, as a matter of logical probability, from those facts that the summary judgment record establishes. To reach that conclusion from those facts would require a factfinder to make too many intermediate inferences and assumptions, none of which logically follows from the facts established by the summary judgment record. *See Bivins*, 191 Or App at 468 (explaining that evidence is insufficient to support an inference if it "requires the stacking of inferences to the point of speculation"). Specifically, a factfinder would have to infer that (1) persons in the business of serving alcohol generally know what medical doctors who are experts in alcohol physiology and effects know about the connection between intoxication and violence; (2) the unspecified "medical, scientific, and lay literature" documenting the connection between intoxication and violence is the type of literature that would be read by persons in the business of selling alcohol;[3] and (3) the operations and clientele of the bar where the other bartender observed a connection between intoxication and violence were similar enough to the operations and

---

[3] The dissent observes—correctly—that in the time since the Supreme Court decided *Moore*, the legislature has mandated an educational program for Oregon alcohol servers that has greatly increased awareness of the dangers of the overconsumption of alcohol. The dissent further observes that the Oregon Liquor Control Commission (OLCC) course addresses the link between "irresponsible drinking" and "violence and violent crime," as well as "specific techniques for cutting off intoxicated patrons in order to avoid fights." 263 Or App at 542-43 (Egan, J., dissenting). However, plaintiffs did not submit any *evidence* of the existence or content of that OLCC curriculum in this case. As a result, until the Supreme Court revisits its formulation of foreseeability in *Moore* in the light of the legislative changes identified by the dissent, the dissent's discussion of the content of that curriculum has no bearing on the issue that this case presents: whether plaintiffs' *evidence* was sufficient to establish that defendant knew or should have known that serving Mayfield while he was visibly intoxicated created an unreasonable risk that Mayfield would act violently.

clientele of bars generally, or to the operations and clientele of defendant specifically, that that bartender's experiences and observations can be generalized to defendant and/or other bars.

On this record, those intermediate inferences represent guesswork. It is not logical to assume that people in the business of selling alcohol know what medical experts on alcohol physiology and effects know about the connection between alcohol and violence, especially on a record like this one, where the uncontroverted evidence shows that defendant did not previously have the opportunity to observe that connection firsthand. It also is not logical to assume that the mere existence of unidentified literature addressing the connection between alcohol and violence means that that literature is of the ilk that people in the business of selling alcohol ordinarily would read—especially when some of that literature is directed toward the fields of medicine and science, and the rest is unidentified, leaving the factfinder to speculate about what that literature is and who is likely to have read it. And it is not logical to assume that the experiences of one bar necessarily generalize to other bars, absent evidence showing how that one bar's operations and clientele are similar to those of other bars.

It may not have taken much additional evidence to convert those unfounded assumptions into permissible inferences. However, plaintiffs did not supply that evidence here, and we cannot supply it for them by speculating that such evidence might exist. As a result, on this record, it cannot be found or reasonably inferred that defendant knew, or had reason to know, from its experience or otherwise, that serving Mayfield while he was visibly intoxicated created an unreasonable risk that Mayfield would become violent.

The dissent reaches a different conclusion. In so doing, the dissent errs in three respects. First, the dissent errs to the extent that it implies that because *Moore* addressed what facts a plaintiff must *plead* in order to establish foreseeability in a case like this one, the standard for foreseeability established by *Moore* does not apply at the summary judgment stage of the case. 263 Or App at 548-49 (Egan, J., dissenting). But if a plaintiff must *plead* certain

facts in order to sufficiently allege foreseeability so as to state a claim for relief, the plaintiff ultimately must *prove* those facts in order to establish foreseeability. The facts required to state a claim for relief *are* the facts that must be proved to obtain relief. *See Davis v. Tyee Industries, Inc.*, 295 Or 467, 479, 668 P2d 1186 (1983) (under ORCP 18 A, "whatever the theory of recovery, facts must be alleged which, *if proved*, will establish the right to recover" (emphasis added)); *Moore*, 307 Or at 259 n 7 (same; quoting *Davis*, 295 Or at 479). And if a plaintiff must prove particular facts at trial to establish foreseeability, the plaintiff must, at the summary judgment stage of the case, come forward with sufficient evidence to permit a jury to find those particular facts in order to avoid summary judgment. *See O'Dee*, 212 Or App at 460-61. That means that, to avoid summary judgment in this case, plaintiffs were required to present sufficient evidence to permit a jury to find specific facts demonstrating that defendant knew or was on notice of the fact that serving alcohol to Mayfield while he was visibly intoxicated created an unreasonable risk of violence. Given the allegations in the complaint, plaintiffs were required to put on evidence sufficient to permit a jury to find that defendant was on notice that serving Mayfield while he was visibly intoxicated created an unreasonable risk of violence by virtue of the fact that defendant was in the business of selling alcohol. Plaintiffs did not do so.

Next, the dissent invokes the principle that questions of foreseeability "'ordinarily'" are jury questions, unless a case involves the "'outer margins of debatable conduct,'" and argues that we are erroneously disregarding that principle. 263 Or App at 550 (Egan, J., dissenting) (quoting *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 12, 734 P2d 1326 (1987)). But that principle—that foreseeability questions ordinarily present jury questions—is not a rule of law, it is a rule of thumb. Moreover, it is a rule of thumb that affords the least guidance where, as here, the Supreme Court has articulated with some precision what facts a plaintiff must prove in order to establish foreseeability. In those instances in which the Supreme Court has identified what facts must be proved in order to establish foreseeability, a court's role in reviewing a grant of summary judgment

is to assess whether the evidence presented by the plaintiff is legally sufficient to permit a factfinder to find those facts that the Supreme Court has said must be found. *See Buchler v. Oregon Corrections Div.*, 316 Or 499, 509, 853 P2d 798 (1993) (court's role is to "determine[] as a matter of law whether the facts alleged or the evidence of them is sufficient to support relief"). That is what we did previously in *Sparks*, and that is what we have done here. *See* 122 Or App at 139-40 (affirming grant of summary judgment to the defendant fraternity because the plaintiff, who alleged that he was assaulted by an underage, intoxicated member, "did not present evidence sufficient to create an inference that [the] defendant's conduct created a foreseeable risk of the kind of injury that occurred," as required by *Moore*).

Finally, the dissent asserts that the evidence presented by plaintiffs is sufficient to create a factual issue on foreseeability and suggests that we have reached a contrary result by impermissibly "elevat[ing] plaintiffs' burden." 263 Or App at 546 (Egan, J., dissenting). But we have not elevated plaintiffs' burden; we have assessed whether the evidence is legally sufficient to permit a jury to find the particular facts that *Moore* says must be found. That is our charge on review of a grant of a motion for summary judgment. *Buchler*, 316 Or at 509; *O'Dee*, 212 Or App at 460-61. And, as explained above, on this sparse evidentiary record, the conclusion that defendant was on notice that serving Mayfield while he was visibly intoxicated created an unreasonable risk of violence would be nothing more than a guess. As a result, plaintiffs' evidence was insufficient to establish that defendant knew or should have known that serving Mayfield while he was visibly intoxicated created an unreasonable risk that Mayfield would act violently, and the trial court correctly granted summary judgment to defendant.

Affirmed.

**EGAN, J.,** dissenting.

The majority concludes that the trial court did not err in granting summary judgment to defendant because plaintiffs had not presented evidence sufficient to create a factual dispute that Mayfield's violent acts were the

foreseeable result of defendant's service of alcohol to Mayfield while he was visibly intoxicated. 263 Or App at 530. Because I disagree that summary judgment was appropriate, I dissent.

To frame my dispute with the majority's conclusion, I set forth the relevant legal history, framework, and social context. In 1987, the Oregon Supreme Court clarified the negligence standard in Oregon in *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987):

> "[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from [the] defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

In describing negligence in terms of "foreseeability" rather than in terms of "duty" or "no duty," the court described how the law provides limits on when one individual might expect to hold another individual liable for harms suffered by the first. The concept of "foreseeability" refers to the *generalized risks of the type of incidents and injuries that occurred* rather than predictability of the actual sequence of events." *Id.* at 21 (emphasis added); *see also Buchler v. Oregon Corrections Div.*, 316 Or 499, 509, 853 P2d 798 (1993) (discussing *Fazzolari*).

A year after *Fazzolari*, the Supreme Court decided *Moore v. Willis*, 307 Or 254, 767 P2d 62 (1988), and *Hawkins v. Conklin*, 307 Or 262, 767 P2d 66 (1988), on the same day. In *Moore*, the defendants, the owners of two taverns, served alcohol to (and then one called a taxi for) two customers, each of whom was visibly intoxicated. The customers left the tavern in the taxi and killed the taxi driver, Moore, while struggling over a gun. The trial court granted the defendants' ORCP 21 B motion for judgment on the pleadings. On review, the Oregon Supreme Court delineated what facts a plaintiff must set forth to sufficiently allege the element of foreseeability and state a claim for negligence and concluded that the complaint in *Moore* was insufficient. The plaintiff had alleged that the tavern owners "were negligent

[in serving alcohol to the visibly intoxicated customers], and their negligence was the proximate cause of [Moore's] death." *Id*. at 257. The court stated:

> "It may be common for intoxicated and underage drinkers to become violent. \* \* \* At the pleading stage, however, a court cannot simply assume that it is common for intoxicated or underage drinkers to become violent in order to support an inference that violence is a foreseeable result of serving alcohol to someone who is intoxicated. \* \* \* In conclusion, [when a plaintiff claims that a risk was foreseeable,] we hold that the complaint *must allege facts that would allow the factfinder to determine that the defendants should have known of the danger to others.*"

*Moore*, 307 Or at 260-61 (internal citations omitted; emphasis added).

In *Hawkins*, a case with a similar factual basis involving the service of alcohol to visibly intoxicated persons who later acted violently, the Oregon Supreme Court determined that the "plaintiff failed to *allege* foreseeability[,]" because the complaint lacked allegations that the defendant had any knowledge or reason to know that the intoxicated customer had acted violently or that, if the defendant had been negligent as alleged—by serving a visibly intoxicated customer alcohol—the defendant then knew or should have known of the risk of violence to others without also having knowledge of the customer's violent or threatening behaviors. *Hawkins*, 307 Or at 269 (emphasis added).

Several years later, we applied those principles in different procedural postures and factual contexts. In *Sparks v. Warren*, 122 Or App 136, 856 P2d 337 (1993), the plaintiff brought a negligence claim for injuries he sustained when one of the defendants, an underage fraternity member, assaulted him after consuming alcohol. We affirmed the trial court's summary judgment ruling in the defendants' favor, concluding that, because the plaintiff had presented *no evidence* on the element of foreseeability to create a genuine issue of material fact, the plaintiff's evidence could not *as a matter of law* result in an inference connecting the defendant's misconduct to the creation of a foreseeable risk of violence. *Sparks*, 122 Or App at 139-40.

More recently, in *Stewart v. Kids Incorporated of Dallas, OR*, 245 Or App 267, 261 P3d 1272 (2011), *rev dismissed as improvidently allowed*, 354 Or 104 (2012), in an action for negligence brought after a 13-year-old girl was sexually assaulted at a fundraiser put on by one of the defendants, we affirmed the trial court's grant of the defendants' ORCP 21 A(8) motion to dismiss. The plaintiff had alleged that the defendants should have known that a "reasonable probability" existed that "sexual predators would come to the [fundraiser] to harm children * * * because teenage girls were participating * * *, the [fundraiser] was advertised, and sexual predators might have had contact with teenage girls participating in the [fundraiser]." *Id.* at 269-70. We rejected the plaintiff's generic allegations of foreseeability, and continued to apply *Moore*'s principles relating to the foreseeability element of negligence claims. *Stewart*, 245 Or App at 286. Thus, our recent precedents still require that plaintiffs allege some specific facts—above and beyond that of visible intoxication and everyday knowledge—that supports an inference that the defendant knew or had reason to know of the danger to others. *Id.*; *Moore*, 307 Or at 260-61.

While *Moore* and *Hawkins* were working through the courts, the legislature enacted Oregon's mandatory alcohol server education program. The Oregon Liquor Control Commission (OLCC) established its education program in 1987, with an aim toward reducing and preventing alcohol-related issues and increasing awareness relating to Oregon alcohol laws, responsible alcohol-service strategies, and problems associated with alcohol abuse. OLCC, Alcohol Server Education Course, 1-2 (2013), *available at* http://www.oregon.gov/olcc/docs/publications/alcohol_ server_education_course.pdf (last modified March 2013) (Fact Sheet). As a result of this first-in-the-nation mandatory program, Oregon professional alcohol servers' understanding of the risks and effects of the overconsumption of alcohol has by legislative directive evolved significantly.

The Supreme Court decided *Moore* and *Hawkins* in 1988—the endpoint of Oregon's era of oblivion to the dangers of the overconsumption of alcohol. In the years since those cases were decided, the expansion of awareness regarding

the toxic consequences of the overconsumption of alcohol has been immense. The Oregon Supreme Court's conclusion in *Moore* that "[t]he fact that someone is visibly intoxicated * * *, standing alone, does not make it foreseeable that serving alcohol to the person creates an unreasonable risk that the person will become violent," 307 Or at 260, cannot be reconciled with the knowledge and current environment relating to alcohol.

Oregon's statutorily mandated alcohol server education program is based on the concept that people who serve alcohol professionally can be a "positive force in reducing alcohol-related problems and enhancing public health and safety." Fact Sheet at 1. Servers receive education regarding alcohol as a drug and its effects on the body, behavior, and driving ability; the effects of alcohol in combination with commonly-used legal (prescription or nonprescription) drugs and illegal drugs; state alcohol beverage laws, such as the prohibition of sale to minors and intoxicated persons, sale for on- or off-premises consumption, hours of operation, penalties for violation of those laws, drunk-driving laws, and liquor liability statutes; alcoholism and community treatment programs and agencies; standard operating procedures for dealing with customers, including intervention with difficult and belligerent customers and ways to cut off service and deal with those customers; alternative means of transportation to get the customer safely home; and advertising and marketing for safe and responsible drinking patterns. ORS 471.542(5).

In the course of that education, servers also learn that irresponsible drinking leads to an array of damages, problems, and societal costs, including violence and violent crime. As the workbook for the Academy of Training and Prevention[1] illustrates, servers learn that alcohol consumption:

---

[1] The OLCC maintains a list of certified training providers on its website. The Academy of Training and Prevention is one of those providers. *See* OLCC, Server Education Trainers (Providers), *available at* http://www.oregon.gov/olcc/docs/service_permits_and_server_ed/provider_list_3_2014.pdf (last modified March 25, 2014). To be certified, a training provider must, among other things, have a course that meets the OLCC's minimum curriculum standards and a workbook "that meets the [OLCC's] Minimum Workbook Standards." OAR 845-016-0015(1), (1)(d).

- "[I]s a major factor in crashes, drowning, industrial accidents, and serious crimes including murder, suicide, assault, rape and domestic abuse."

- "[I]mpairs the thoughts and actions of the drinker" and, when consumed in excess, "may alter judgment."

- Can cause violence by "lowering inhibitions in people with a tendency to violence."

Academy of Training and Prevention, OLCC Alcohol Education Program Alcohol Server Education Online Training Manual, ATP 4, 12, 14, *available at* http://www.olccclass.com/Resources/Workbook (last modified December 2010) (Workbook). Further, servers learn that they are in a position to "reduce the deaths, injuries, damages, societal problems, and costs resulting from the misuse of alcohol" and are in "a position of public trust to dispense a drug that * * * can have deadly results when used inappropriately." *Id.* at ATP 5.

As pertinent here, servers learn specific techniques for cutting off intoxicated patrons in order to avoid fights and how to "keep control of the situation even though an intoxicated customer may be hostile, threatening, and irrational." *Id.* at ATP 49. Servers are also educated on Oregon's liquor liability laws, including the fact that they may be liable for "deaths, injuries, and damages caused by intoxicated persons even when an automobile crash is not involved." *Id.* at ATP 59. As a result of this statutorily-mandated training, servers today are well aware of the dangers of overconsumption of alcohol. According to the OLCC:

> "This training has increased alcohol servers' awareness of problems associated with alcohol abuse and gives servers the information and skills they need to sell alcohol responsibly. Trained, professional servers have learned to deny service to minors and to visibly intoxicated persons. As a result, the vast majority of OLCC-licensed businesses sell alcohol safely and responsibly and do not create problems for their patrons or communities."

Fact Sheet at 2.

Given the legislature's express recognition of the dangers connected to the overconsumption of alcohol, including,

specifically, the risk of the "aggressive" or "belligerent" customer, and the enlightenment of Oregon's servers in the decades since *Moore* that has transpired as a result, it is fair to say that, in Oregon today, the fact that someone is visibly intoxicated ordinarily will make it foreseeable to a professional alcohol server that serving that person more alcohol creates an unreasonable risk that that person will become violent. As a result, proof of the fact that a person was visibly intoxicated at the time a server served that person another drink ordinarily should be sufficient to create a jury question as to whether any subsequent violent conduct by the visibly intoxicated person was foreseeable to the server. Further, evidence such as that presented by plaintiff, showing a link between alcohol and violence, commonly serves to corroborate and buttress the evidence that the person was visibly intoxicated, creating an issue of fact concerning whether that person's acts were foreseeable to the server. Although that fact may not *compel* the conclusion that violence was foreseeable, it, at a minimum, is sufficient to submit the issue of foreseeability to the jury in a case like this one, where there is no reason to think that defendant's statutorily mandated training did not put it on notice that the resulting harm was one of the many predictable (and legislatively anticipated) consequences of the over-service of alcohol and excess alcohol consumption. The legislature long ago recognized that violence is a predictable harm associated with the overconsumption of alcohol. As a result of that legislative recognition, servers are aware of that predictable harm as well. It is time for the law to catch up.

Because the law has not yet done so, I do not dispute the applicability of *Moore*'s basic principles to this case; however, I believe that the majority improperly applies those principles. Based on the facts alleged and the evidence presented, I would conclude that plaintiffs' evidence created a genuine issue of material fact under *Moore*'s principles as currently applied.

Plaintiffs alleged that

"[i]ntoxicated drinkers frequently become violent. Defendant ***, which was in the business of serving alcohol, had reason to know that Mayfield would become violent, because those who are in the business of serving alcohol

know that visibly intoxicated drinkers frequently become violent."

Thus, plaintiff met *Moore*'s basic pleading requirements by alleging more than just Mayfield's visible intoxication. Defendant, in its motion for summary judgment, asserted that there was *"no evidence* that Mayfield's off-premises criminal assault was *reasonably foreseeable*—a prerequisite to stating a claim for relief against a commercial alcohol provider under Oregon law." (Emphasis added.) In opposing defendant's summary judgment motion, plaintiffs presented evidence on the issue of foreseeability in the form of Dr. Brady's declaration and an excerpt of the bartender's deposition transcript.

Brady's declaration, excluding the stricken sentence, was admissible evidence that Mayfield was visibly intoxicated at the time he drank his last two to three drinks at defendant's bar. Based on the blood alcohol content (BAC) extrapolated by Brady, which was between 0.200 percent and 0.250 percent at the time Mayfield left defendant's bar, Brady opined that Mayfield would not only have been visibly intoxicated, but would have had impaired judgment and would have been unable to employ reasonable decision-making skills, and, like others who have consumed similar quantities of alcohol, would have lacked normal judgment and self-control. Brady also opined that "intoxicated drinkers frequently become violent. *** The link between visible intoxication and increased levels of violence has been well-established in the medical, scientific, and lay literature for decades, if not more than a century." The declaration also noted that Brady was "prepared to testify to the opinions set forth herein."

Plaintiffs also submitted the following colloquy linking alcohol and violence from a portion of the bartender's deposition testimony:

"[Attorney]: And when you say a tremendous amount of traffic, can you quantify that for us? I mean, you say it's everyday you've got [methamphetamine users] in the bar.

"[Bartender]: Yeah.

"[Attorney]: Violence in the bar as well associated with the [methamphetamine users]?

"[Bartender]: No, not the [methamphetamine users]. That's what alcohol is for.

"[Attorney]: That's the alcohol?

"[Bartender]: That's the alcohol talking.

"[Attorney]: How frequently do you have some disruptive violent behavior going on?

"[Bartender]: I'd say maybe once a month max, something like that."

The bartender testified that he worked at a bar within walking distance of defendant's bar and that he had been trained to evaluate whether a patron has had too much to drink in order to determine whether to serve that patron alcohol. The bartender went on to state that he had made a similar evaluation of Mayfield on the night of the shooting and declined to serve him. The bartender also testified that defendant's typical patrons generally consisted of an aging population, but that he had been in that bar multiple times in the past several years and had seen visibly intoxicated patrons in that bar. He further noted that, on occasion, patrons from defendant's bar had come to his bar after defendant's bar had closed for the evening.

That admissible evidence specifically addressed the issue raised in defendant's motion for summary judgment, *i.e.*, foreseeability. The majority concludes that that evidence "is insufficient to permit a rational factfinder to make the finding that *Moore* requires." 263 Or App at 533.

The majority's conclusion that plaintiffs' evidence does not create a genuine issue of material fact is incorrect. The majority appears to incorrectly elevate plaintiffs' burden in responding to that motion for summary judgment. In doing so, the majority also disregards the general—and longstanding—rule that foreseeability questions are typically jury questions.

The majority incorrectly elevates plaintiffs' burden in responding to the motion for summary judgment by requiring that plaintiffs submit *additional* evidence. As to Brady's declaration, the majority reasons that, to create a factual issue, plaintiffs had to *supplement* the evidence that

plaintiffs had already presented; that is, without "additional evidence," the majority concludes that plaintiffs' evidence would not permit a reasonable factfinder to infer that defendant knew or had reason to know that violence would be a foreseeable result of serving alcohol to a visibly intoxicated person, *i.e.*, Mayfield. 263 Or App at 530-31, 535 n 3, 536. The majority finally states that

"[i]t may not have taken much *additional evidence* to convert those unfounded assumptions into permissible inferences. However, plaintiffs did not supply that evidence here, and we cannot supply it for them by speculating that such evidence might exist."

263 Or App at 536 (emphasis added).

By breaking down the evidence presented into individual pieces, instead of looking at the sum of the evidence on the issue of foreseeability, and then delving into a discussion of the "stacking of [permissible] inferences," the majority's reasoning misses the forest for the trees. It concludes that no reasonable mind could infer that defendant should have known that serving Mayfield while he was visibly intoxicated would lead to Mayfield's violent acts. 263 Or App at 535-36. That conclusion is based on reductionism in its most patent form and excludes, in my view, several key points that can be drawn from plaintiffs' evidence, which I have drawn out above. Those points lead to other, reasonable inferences that the majority disregards (such as that a person in the business of serving alcohol would know that a connection exists between the consumption of alcohol and violence, or that, because Mayfield was highly intoxicated after over-consuming alcohol—to the point that his judgment and self-control was impaired—he would, like others who consume too much alcohol, act in an unreasonable manner and create unreasonable risks).

The majority goes on to conclude that "the *only* evidence that plaintiffs submitted in support of that 'reason to know' theory of foreseeability" consisted of Brady's declaration—setting forth facts that he, a medical doctor with expertise in "alcohol physiology," could testify, "to a degree of reasonable medical certainty," that "[i]ntoxicated drinkers frequently become violent" and that "*medical,* scientific,

*and lay literature*" has established "the link between visible intoxication and increased levels of violence"—and the deposition testimony of the bartender that, in his experience, when a bar patron becomes violent, it is due to the influence of alcohol. 263 Or App at 532-33 (emphasis added). The majority then states that it would be "guesswork" to infer that "the unspecified 'medical, scientific, and lay literature'" documenting the connection between intoxication and violence is the type of literature "that would be read by persons in the business of selling alcohol." 263 Or App at 535-36. At this stage in the litigation, the absence of reference to a specific, identifiable piece of literature in Brady's declaration is not fatal to the question whether the jury *could* infer that defendant's conduct created a risk of violence based on the evidence presented, nor does it compel a judgment for defendant. *See generally Jones v. General Motors Corp.*, 325 Or 404, 413-14, 939 P2d 608 (1997) (Under ORCP 47 C, no genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, "'no objectively reasonable juror could return a verdict for the adverse party,'" which means that "summary judgment is appropriate only if the * * * facts would *compel* a jury to return a verdict for the moving party." (Quoting ORCP 47 C; emphasis added.)). In requiring additional evidence, the majority erroneously elevates the standard required by *Moore* and ORCP 47 C.

In this case, unlike in *Moore, Hawkins*, and *Stewart*, the question arises in relation to a motion for summary judgment pursuant to ORCP 47 C. "[U]nder ORCP 47 C, the party opposing summary judgment has the *burden of producing evidence* on any issue 'raised in the motion' as to which the adverse party *would have the burden of persuasion at trial.*" *Two Two v. Fujitec America, Inc.*, 355 Or 319, 324, 325 P3d 707 (2014) (emphasis added). Because defendant "raised in the motion" the issue of foreseeability, and plaintiffs "had the burden of persuasion on that issue at trial," plaintiffs therefore were required, under ORCP 47 C, "to *produce evidence* on the issue of [foreseeability] to defeat summary judgment." *Id*. at 324 (emphasis added). The majority conflates that minimal burden with plaintiffs' eventual burden

of persuasion at trial[2] (that it no doubt would have had, had the action survived that long).[3]

Plaintiffs discharged that burden. And although I acknowledge that plaintiffs are relying on a slim evidentiary reed, contrary to the majority, I would neither hold that the evidence, as a matter of law, does not create a genuine issue of material fact nor that, *at this stage in the litigation*, additional evidence is required to demonstrate that a genuine issue of material fact exists in order for the fact question to reach a jury.

The proper question is whether plaintiff produced admissible evidence on the issue of foreseeability—*i.e.*, that defendant's conduct caused a "foreseeable risk * * * of the kind of harm that befell the plaintiff[s]," *Fazzolari*, 303 Or at 17—so as to create a "triable issue," or rather, so as to demonstrate that a genuine issue of material fact exists such that plaintiffs are entitled to a jury determination of that fact. ORCP 47 C; *see also Jones*, 325 Or at 413; *Doyle v. City of Medford*, 256 Or App 625, 650, 303 P3d 346, *rev allowed*, 354 Or 386 (2013); *Wilson v. Wilson*, 224 Or App 360, 364, 197 P3d 1141 (2008), *rev den*, 346 Or 258 (2009) (citing *Davis v. County of Clackamas*, 205 Or App 387, 393-94, 134 P3d 1090, *rev den*, 341 Or 244 (2006), for the proposition that

---

[2] OEC 305 states that "[a] party has the burden of persuasion as to each fact the existence or nonexistence of which the law declares essential to the claim for relief or defense the party is asserting."

The burden of persuasion, as described in OEC 305

"summarizes the obligation of a party to convince the trier of fact that the party's assertion about an essential fact is true. If that party does not establish the truth of that essential fact in the mind of the factfinder by the requisite standard of proof, then the factfinder cannot find that the fact exists. * * * * * The burden of persuasion is, in essence, a method of breaking ties regarding *disputed factual questions*."

*State v. James*, 339 Or 476, 487, 123 P3d 251 (2005) (emphasis added).

[3] By determining that plaintiffs' affirmative evidentiary showing was insufficient to show that issues of fact existed because plaintiffs would have had the trial burden as to the issue of foreseeability, the majority forgets that "[t]he record on summary judgment is viewed in the light most favorable to the party opposing the motion. *This is true even as to those issues upon which the opposing party would have the trial burden.*" *Jones*, 325 Or at 420 (emphasis in *Jones*); *see also Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 613, 892 P2d 683 (1995) (at the summary judgment stage, the moving party has the burden to establish that there are no genuine issues of material fact, "even though [the adverse party] would have had the burden of establishing its claims at the time of trial").

ORCP 47 C gives the adverse party the "burden of producing [admissible] evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial"); *O'Dee v. Tri-County Metropolitan Trans. Dist.*, 212 Or App 456, 461, 157 P3d 1272 (2007) (discussing burden of producing evidence, meaning that plaintiff had to "come forward with specific facts demonstrating a genuine issue for trial"). The answer to that question is yes.

Thus, by requiring that plaintiffs present additional facts to demonstrate a factual issue for purposes of opposing the summary judgment motion, the majority has elevated the standard of what the adverse party is required to present at the summary judgment stage. *See Forest Grove Brick v. Strickland*, 277 Or 81, 87, 559 P2d 502 (1977) ("It is not the function of this court on review to decide issues of fact but solely to determine if there is an issue of fact to be tried."). Under the majority's analysis, the only means by which plaintiffs could show foreseeability would be a demonstration that that particular defendant knew about the particular individual's propensity for violence or that all defendants had such knowledge. Both of these showings are an anathema to the concept of *reasonable* foreseeability as articulated in *Moore*.

Thus, I would hold that, by presenting affirmative evidence relating to foreseeability, plaintiffs showed that a factual issue existed. I would conclude that a reasonable juror could infer that the risk of harm was foreseeable if defendant acted negligently (as alleged, by serving Mayfield when he was visibly intoxicated) based on the inference that defendant, a business that serves alcohol, would frequently have the opportunity to observe the reactions of people who consume alcohol, including, but not limited to its typical patrons, and would have reason to know that a person who consumes alcohol in excess may respond with violent behaviors. *Sparks*, 122 Or App at 140.

That leads me to my next point. The majority erroneously disregards the general rule that foreseeability questions are typically jury questions. *Fazzolari*, 303 Or at 12 (questions of foreseeability "ordinarily can be left to the jury, although at the outer margins of debatable conduct a court

is obliged to say that the conduct does or does not meet the standard") (internal quotation marks omitted).

That principle did not begin with *Fazzolari*;[4] rather, it was in longstanding use in our jurisprudence and continues to play an important role.[5] The majority concludes that this "rule of thumb" "affords the least guidance where, as here, the Supreme Court has articulated with some precision what a plaintiff must *prove* in order to establish foreseeability." 263 Or App at 537 (emphasis added). It is improper to disregard that longstanding principle when the circumstances of the case are not at the "outer margins of debatable conduct." *Moore*, 307 Or at 254; *Hawkins*, 307 Or at 262; *Sparks*, 122 Or App at 136. This case is not so extreme that the circumstances dictate that the foreseeability issue should not be presented to the jury. *See McPherson v. Oregon Dept. of Corrections*, 210 Or App 602, 613-14, 152 P3d 918 (2007) (when an escaped convict assaulted the plaintiff at an apartment complex, and harm to the plaintiff was allegedly

---

[4] *See, e.g., Donaca v. Curry Co.*, 303 Or 30, 38, 734 P2d 1339 (1987); *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 607-08, 469 P2d 783 (1970) (stating principle); *Kirby v. Sonville*, 286 Or 339, 347, 594 P2d 818 (1979); *Katter v. Jack's Datsun Sales, Inc.*, 279 Or 161, 168, 566 P2d 509 (1977) ("A case should be taken from the jury only when the facts are such that only one conclusion can be drawn from them."); *Cutsforth v. Kinzua Corp.*, 267 Or 423, 445-46, 517 P2d 640 (1973); *Kor v. Sugg*, 250 Or 543, 548, 443 P2d 641 (1968) ("Normally the question of whether a defendant is negligent under particular circumstances is for the jury."); *Eberle v. Benedictine Sisters*, 235 Or 496, 499, 385 P2d 765 (1963) (ordinarily questions of fact are for the jury); *Powell v. Moore*, 228 Or 255, 263, 364 P2d 1094 (1961) (same); *Arney v. Baird*, 62 Or App 643, 647, 661 P2d 1364, *rev den*, 295 Or 446 (1983) ("The issue should have been withdrawn from the jury only if defendants' conduct *clearly falls either above or below* the community's standard of reasonable care." (Emphasis added.)); *Itami v. Burch*, 59 Or App 400, 403-04, 650 P2d 1092 (1982) (noting prior case law stating that "[t]he question whether a reasonable person in appellants' position would have foreseen risks of injury to the plaintiff is a question of fact for the jury. Accordingly, our role on review is a limited one.") (citations omitted).

[5] *See, e.g., Fazzolari*, 303 Or at 17 (stating principle); *McPherson v. Oregon Dept. of Corrections*, 210 Or App 602, 618, 152 P3d 918 (2007) (reiterating principle); *Najjar v. Safeway, Inc.*, 203 Or App 486, 492, 125 P3d 807 (2005) ("The Supreme Court has cautioned us that we are to conclude that a reasonable jury could not come to such a conclusion only in the 'extreme case[,]' *** [i.e.,] the case that falls beyond the outer margins of debatable conduct[, which] *** are few and far between and should be identified *ad hoc*. Mindful of that rule, we cannot conclude that this case is extreme."); *Panpat v. Owens-Brockway Glass Container*, 188 Or App 384, 393, 71 P3d 553 (2003) ("[F]oreseeability is generally regarded as a question of fact, and the issue is not a likely candidate for summary judgment." (Internal quotation marks omitted.)).

foreseeable, we noted, "[W]hether a rational juror can find that harm is foreseeable, particularly in the context of criminal activity by third parties, is an *ad hoc* determination depending on the particular circumstances of each case. No bright line rules exist. Fact-matching is of limited utility. *Unforeseeability as a matter of law should be found only in extreme cases.*" (Emphasis added.)).

As further support for the majority's neglect of that oft-cited legal principle, it states that it is simply following its role to "determine[] as a matter of law whether the facts alleged or the evidence of them is sufficient to support relief." 263 Or App at 538 (citing *Buchler*, 316 Or at 509). However, when viewed in context, it is clear that *Buchler* provides no support to the majority because the general rule—that foreseeability questions remain factual questions for the jury to decide as long as they fall "within" the range of "circumstances or conditions under which one member of society may expect another to pay for a harm suffered"—remains the same.[6] *Id.*

Under *Moore* and *Hawkins*, plaintiffs' allegations were adequate. Further, plaintiffs' evidence submitted in response to a motion for summary judgment demonstrated that a genuine issue of material fact exists and that this case is not an "extreme case" at the "outer margins" or "outside [the] limits" of circumstances or conditions under which one member of society may expect another to pay for a harm suffered.

---

[6] In *Buchler*, the Oregon Supreme Court stated:

"[As discussed in *Fazzolari*,] '[d]uty' and 'foreseeability' are each but verbal tools used in explanatory reasoning to answer the legal question, 'Should defendant pay for plaintiff's harm?' In either formulation, the use to which courts and litigants put the question remains the same. When tested *before trial*, do the allegations of a complaint state facts that, under the law, will allow plaintiff to recover from the named defendant? When tested *after a trial*, does the evidence introduced reasonably permit findings of fact on which the law will allow the plaintiff to recover from the defendant? Either formulation—duty or foreseeability—is a method of describing how the law limits the circumstances or conditions under which one member of society may expect another to pay for a harm suffered. *Within those limits*, the jury or other factfinder may determine whether to award damages and in what amount. *Outside those limits*, the judge determines as a matter of law whether the facts alleged *or the evidence of them* is sufficient to support relief."

316 Or at 508-09 (emphasis added).

And, in point of fact, the case on which the majority relies, *Buchler* is instructive. In that case, a convicted car thief with no known history of violent conduct escaped from prison. 316 Or at 502. Two days later, and over 50 miles away, the escaped prisoner shot two people, killing one and injuring the other. *Id.* As to the question of foreseeability, the Supreme Court concluded that that factual scenario was "outside th[e] limits" and concluded that, "[a]s a matter of law, the harm that actually occurred did not result from any risk of harm to others that was unreasonably created by leaving the keys in the van [which facilitated the prisoner's escape]; summary judgment was appropriate for that factual allegation of negligence." *Id.* at 514.

In juxtaposition, defendant served Mayfield until he was visibly intoxicated, with an estimated BAC between 0.200 percent and 0.250 percent, when he left defendant's bar, walked a short way up the street, was unsuccessful in getting other bartenders at nearby bars to serve him alcohol, and then shot and injured plaintiffs. As noted by my prior recitation of case law, such incidents are not uncommon, nor "extreme." Indeed, the circumstances of this case are fairly representative of the facts common to the cases dealing with over-consumption of alcohol and violence. Therefore, the factual questions that exist in this case should be decided by a jury, as our precedents have clearly dictated. *See, e.g., Moore*, 307 Or at 257; *Hawkins*, 307 Or at 269; *Sparks*, 122 Or App at 140.

Accordingly, I dissent.